UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES,**

                Plaintiff,

    v.

**ANDREW FRANKLIN KOWALCZYK,**

                Defendant.

Criminal Case No. 3:08-95-KI

OPINION AND ORDER ON
FRANKS HEARING

S. Amanda Marshall
United States Attorney
Scott M. Kerin
Gary Y. Sussman
Assistant United States Attorney
1000 SW Third Avenue, Suit 600
Portland, OR 97204

      Attorneys for Plaintiff

Noel Grefenson, P.C.
Attorney at Law

Page 1 - OPINION AND ORDER

1415 Liberty Street SE
Salem, OR 97302

Attorney for Defendant

KING, Judge:

Andrew Kowalczyk is charged in a Superseding Indictment with nine counts of Sexual Exploitation of Children. Pending before me is Kowalczyk's Motion for a Franks Hearing [167],[1] challenging statements made in Puyallup Police Detective Jason Visnaw's January 4, 2008 search warrant affidavit. Detective Visnaw's affidavit requested issuance of a warrant to search Kowalczyk's computers and related electronic devices for evidence of depictions of minors engaged in sexually explicit conduct. I deny in part and defer in part Kowalczyk's motion and issue this order to obtain additional argument and evidence from the government in order to determine whether a Franks hearing is warranted.

## FACTUAL BACKGROUND

Kowalczyk was arrested by the Puyallup Police at the Northwest Motor Inn on December 27, 2007.[2] They handcuffed him, placed him in a police car, and read him his Miranda rights. The Puyallup Police then searched the bags Kowalczyk had been carrying at the time of his arrest,

---

[1]Kowalczyk has separately filed a pro se Motion for Franks Hearing [201]. This Opinion and Order does not address that motion.

[2]I have omitted the events leading up to Kowalczyk's arrest; I include only those facts relevant to this motion, which are based only on the police reports, warrants and supporting affidavits accompanying Kowalczyk's motion for a suppression hearing and motion to compel discovery. Many of the events will be the subject of upcoming, extensive suppression hearings.

pursuant to a search incident to arrest.[3] A Puyallup officer found a digital camera in one of the bags, activated it and viewed some of the images depicting what appeared to be child pornography involving a very young child. At the time of Kowalczyk's arrest, police seized an Acer laptop computer, cellular telephones, iPods, a Palm Pilot, multiple computer hard drives, a thumb drive, memory sticks, two digital still cameras, a digital video recorder, miniDV video tapes, and various items used to manufacture counterfeit credit or identification cards.

Detective Visnaw applied for and obtained a Washington state search warrant to search Kowalczyk's motel room on December 27, 2007. In the affidavit, Detective Visnaw catalogued the property found during the search incident to arrest that he believed was related to forgery or identity theft. He also stated, "It should be noted that images on the digital camera were viewed by officers at the time of the search, but will not be mentioned in this affidavit because they are not being used for probable cause. Details of these images are available to the issuing judge upon request." MTS-119B, at KOWAL00102. Pursuant to the warrant, officers seized two computer printers, a digital tablet, a computer monitor, a desktop PC without a hard drive, and miscellaneous documents from the motel room.

On January 3, 2008, Detective Visnaw requested and obtained a Washington state search warrant to search the electronic devices the Puyallup Police had seized, with the exception of the digital camera that was seized and searched at the time of Kowalczyk's arrest, for evidence of identity theft and forgery. His affidavit in support of the warrant, running close to eight pages, described the events leading up to Kowalczyk's arrest, the items found during the search incident

---

[3]Kowalczyk disputes that the search was a proper search incident to arrest. Again, this will be the subject of upcoming, extensive suppression hearings and nothing in this Opinion and Order is intended to comment on that issue.

to arrest, and summaries of Detective Visnaw's conversations with three individuals whose names and other personal identifying information Kowalczyk had used on driver's licenses found among the seized items. Additionally, Detective Visnaw included the following statements, in a summary of previous investigation efforts:

> It should be noted that images on the digital camera were viewed by officers at the time of the search, but were not detailed in the affidavit [for the motel room warrant] because they were not being used for probable cause. Some of the images stored on Kowalczyk's digital camera were very sexually explicit images of a female child of the approximate age of 2. Officers viewing the images reported seeing Kowalczyk in at least one image with the child and with his penis in view. The warrant affidavit indicated that details of these images were available to the issuing judge upon request.

MTS-120B, at KOWAL00112. He did not seek permission to search for evidence of child pornography.

The warrant to search electronic devices for forgery and identity theft was issued on January 3, 2008. According to his Digital Data Examination Log, Investigator Franklin Clark of the Pierce County Prosecutor's Data Recovery Lab, received the electronic devices on January 3, 2008[4] from Detective Visnaw. In his report, Investigator Clark described photographing and documenting the evidence, and then imaging the hard drive of the Acer laptop computer. While the hard drive was imaging, Investigator Clark described how he "previewed the disk looking for evidence of ID theft and Forgery." MTS-127, at KOWAL03337. Looking at the "folder/files on the hard disk where the names of each are visible," he found "files possibly related to ID theft including credit card numbers" and a number of "graphic files" with names indicative of child pornography. He previewed some of those files and confirmed they were images of minors engaged in sexually explicit conduct. He

---

[4]He wrote "January 3, 2007" in his report.

also examined "mini dv tapes" and read the handwritten names on them, such as "Alexa, Suzana, Jane, Deeta, Limo, Andrea, Unknown, Genene." Id. Investigator Clark stopped his examination and contacted Detective Visnaw and Deputy Prosecuting Attorney Wagner about the images he viewed. He "then wrote an affidavit to continue to search [the electronic devices] for evidence of the additional crimes dealing with said depictions. Det. Visnaw obtained the warrant and provided me the same on January 4th." Id.

Detective Visnaw submitted yet another request for a warrant, along with an affidavit for which "Criminal Investigator Clark" had provided information, on January 4, 2008. MTS-121B. Detective Visnaw extensively described Investigator Clark's background, training and experience, then repeated two paragraphs almost word for word from Investigator Clark's Digital Data Examination Log describing how Investigator Clark discovered the images on January 3, 2008.[5] Detective Visnaw also incorporated a statement from Puyallup Officer Joseph Pihl about the images he had found on the camera during the search incident to arrest. Based on Detective Visnaw's affidavit, a warrant was issued on January 4, 2008 to search the electronic devices–including the camera–for evidence of child pornography.

## LEGAL STANDARDS

In Franks v. Delaware, 438 U.S. 154, 164-65 (1978), the Supreme Court held that intentionally and recklessly submitting false statements in a warrant affidavit violates the Fourth Amendment. A defendant is entitled to a Franks hearing if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." 438 U.S. at 155-56. To meet his burden, the

---

[5]Again, the affidavit repeated the inaccurate date of "January 3, 2007."

defendant "should point out specifically the portion of the warrant affidavit that is claimed to be false" and submit a detailed offer of proof. Id. at 171; United States v. Kiser, 716 F.2d 1268, 1271 (9th Cir. 1983). Allegations of negligence or innocent mistake will not suffice. Franks, 438 U.S. at 171. Additionally, the defendant must challenge the affiant's statements, not the veracity of his informant. Kiser, 716 F.2d at 1271.

If perjury or reckless disregard for the truth is established by a preponderance of the evidence, the court must set the "false" material aside and determine whether the "remaining content is sufficient to establish probable cause." Franks, 438 U.S. at 156. If not, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. Courts have employed a similar analysis when a defendant alleges the warrant affidavit contains material omissions. United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985). Material omissions should be inserted in the affidavit and examined to see whether probable cause remains.

## DISCUSSION

Detective Visnaw's affidavit relied on information he obtained from Investigator Clark, who was purportedly examining defendant's Acer laptop hard drive on January 3 for evidence of identity theft and forgery. The paragraph Kowalczyk seems to target reads as follows:

> While the disk was imaging using a firewire, write protect hardware device to prevent accidental writes to the evidence disk[,] Investigator Clark previewed the disk looking for evidence of ID theft and Forgery. This examination involves *looking at the folders/files* on the hard disk *where the names of each are visible*. It is in this manner a quick determination of the presence of related evidence can be determined. Investigator Clark observed graphic files named "child whore, 3yo, baby & man, posing 4yo, mom & 2boys, baby pussy fun, 6yo penetration." Said files are consistent in Investigator Clark's training and experience with depictions of minors engaged in sexually explicit conduct. Investigator Clark

Page 6 - OPINION AND ORDER

previewed some of the suspicious files and observed they contained pictures consistent with their names.  They depicted young babies and children nude, with their genitals exposed, some with adults touching the minor's genitals and very young (pre-pubescent) children engaged in oral and vaginal sex with adult males. These files are dispersed in directories indicating the age of the children involved which shows the person(s) saving said graphics spent time downloading and saving the pictures.

MTS-121B, at KOWAL001223-4 (emphasis added).  Investigator Clark's observations were used to support, for the first time, a warrant to search the camera, along with the other electronic devices, for child pornography.

I.      Statements of Investigator Clark

Many of Kowalczyk's arguments go to Investigator Clark's veracity; the government responds that it is only "the *affiant's* truthfulness that is at issue in a Franks motion, not the accuracy of information provided by a third party."  Gov't Resp. 11.

I note, however, that:

[a] deliberate or reckless omission by a government official who is not the affiant can be the basis for a Franks suppression.  The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants.  While we do not suggest that this is the case here, a different rule would permit government officials deliberately to keep from affiants or the court information material to the determination of probable cause and by such conduct avoid the necessity of a Franks hearing.

United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992); see also United States v. Aviles, 170 F.3d 863, 867 (9th Cir. 1999) (task force member "has an obligation to disclose . . . all information material" to a warrant application), amended by 216 F.3d 881 (9th Cir. 2000). Investigator Clark is employed as a criminal investigator with the Pierce County Prosecutor's Data Recovery Lab.

Furthermore, Investigator Clark's report indicates *he* wrote the material to be included in Detective Visnaw's affidavit, writing, "At this point the preliminary examination was stopped and I notified Det. Visnaw and DPA Wagner of the depictions of minors engaged in sexually explicit conduct found on the suspect laptop hard disk. *I then wrote an affidavit* to continue to search of the above evidence for evidence of the additional crimes dealing with said depictions. Det. Visnaw obtained the warrant and provided me the same on January 4th." MTS-127, at KOWAL03337 (emphasis added).

The government is directed to respond to whether Investigator Clark's statements may be the proper subject of Kowalczyk's motion given the authority set forth above.

II.     Investigator Clark's Work Report

Kowalczyk provides evidence indicating Investigator Clark was not working on January 3 when, according to his report and the information he prepared for Detective Visnaw, he purportedly initially found the child pornography. The work record submitted by Kowalczyk reflects that Investigator Clark actually began working on the case on January 4, 2008.

The government does not respond to Kowalczyk's evidence that Investigator Clark may not have been working at all on January 3. The evidence is Defendant's Exhibit MTC-101, which is labeled "Prosecutor's Office Compensation Request for Non-Exempt Employees" for pay period beginning 12/31/07 to 1/13/08. The first entry on the top section of the document is 1/4/08 and reads, "Call @ Home by DPA Wagner Need data on 07012747 *emergency children @ risk*." MTC-101 (emphasis added). The "Approx. Time Requested" is 7.5 hours, which was pre-approved by a supervisor. The lower half of the document, entitled "Compensation Summary," indicates Investigator Clark worked on Friday, 1/4/08 from "0630-1430" and a

Page 8 - OPINION AND ORDER

separate set of hours the beginning of which is illegible and ending at 2400, which was broken

down into 7 "Regular Hours" and 7.5 "Comptime Hours" for a total of 14.5 hours.  He also

worked on 1/5/08, 1/7/08 and 1/9/08.

Additionally, Kowalczyk notes that Investigator Clark's report contains third person

references, as if someone else in fact examined the media.  Kowalczyk argues, "there is . . . a

legitimate question about whether Investigator Clark or, for that matter, any other person even

examined the Acer laptop on January 3, 2008."  Def.'s Mem. 5.

With respect to the third person references in Investigator Clark's Digital Data

Examination Log, the government points out that although Investigator Clark writes in the third

person, first-person references also appear throughout the document.  Furthermore, he

specifically identified the individual electronic devices that were examined by other people.  For

example, "J. Crawford" examined two memory sticks, "Det. John Crawford" examined and

imaged JVC Mini DV tape, and "Det. Greg Dawson" examined cell phones.  MTS-127, at

KOWAL03335-6.

The third-person references alone are not persuasive, but, in light of Investigator Clark's

timesheet, I require further explanation from the government.  Unless the government can

explain the series of events occurring on January 3 and 4, Kowalczyk may be entitled to a Franks

hearing to explore Investigator Clark's truthfulness about how he discovered the child

pornography.  For example, if the date in Investigator Clark's Digital Data Examination Log is

wrong and he began his search pursuant to the identity theft and forgery warrant on January 4 and

not January 3, then the fact that he was called at home and told "emergency children @ risk" on

January 4 may support Kowalczyk's theory that Investigator Clark was tipped off about the child

Page 9 - OPINION AND ORDER

pornography and was surreptitiously searching for it beyond the scope of the January 3 warrant. Alternatively, if someone else reviewed the materials on January 3 when Investigator Clark was not working, and Investigator Clark falsely indicated he reviewed the materials, Detective Visnaw's affidavit contains false statements about the examiner's background and training that may be material to a finding of probable cause. Because a more innocent explanation is possible–the document represents Investigator Clark's "comptime" and not regular hours, or he was called at home after "1430" on January 4 and returned to work at the illegible time because Detective Visnaw had obtained the January 4 warrant and "children [were] @ risk"–I request a response from the government to avoid the need for a <u>Franks</u> hearing.

III.   <u>Remaining Arguments</u>

Kowalczyk's remaining arguments are insufficient to trigger a <u>Franks</u> hearing, either alone or when considered together.

He first argues that a screen shot of the Acer laptop's hard drive conflicts with Investigator Clark's assertion that he saw "files" with the graphic names when it is the "file folders" carrying the names indicative of child pornography; the files themselves were identified by number. Regardless of whether the file names belonged to files or file folders, Investigator Clark's report supports that he previewed some of those files (or files within some of those folders) and personally viewed the child pornography. Whether or not Investigator Clark used the wrong term, Investigator Clark provided sufficient probable cause to Detective Visnaw to support the January 4 warrant. Importantly, Kowalczyk does not argue that Investigator Clark *could not* have seen the file folder names in his "preview . . . looking for evidence of ID theft and Forgery." MTS-127, at KOWAL03337.

Page 10 - OPINION AND ORDER

Kowalczyk also argues Investigator Clark must have been using a Known File Filter in performing his preview of the computer's contents. According to Kowalczyk, the Known File Filter feature (which is part of the Forensic Toolkit software Investigator Clark was using) automatically scans the hard drive and compares the hash value (digital fingerprint) of the hard drive's files to a database containing the hash value of files known to contain child pornography and alerts the examiner to the suspect files. Investigator Clark's report indicates he used the Known File Filter tool on January 4 to look for child pornography (after issuance of the warrant permitting him to search the electronic devices for child pornography). Kowalczyk argues that because Investigator Clark used the Known File Filter on January 4, it is likely he used it on January 3.

Kowalczyk offers no evidence to support his theory that Investigator Clark used the Known File Filter on January 3 just because he used it on January 4. Furthermore, because he used it on January 4 does not make it more likely that he also used it on January 3. The January 3 warrant authorized only a search of evidence for identity theft and forgery, so Investigator Clark had no reason to utilize a tool to look for child pornography. However, it did make sense for him to use the tool on January 4 because he had express authorization to look for child pornography at that time.

Finally, Kowalczyk notes that Detective Visnaw *did not* describe the images found on the camera in his December 27, 2007 motel room search warrant affidavit, but *did* describe the images in his January 3, 2008 warrant affidavit in support of the search for evidence of identity theft and forgery on the electronic devices. Kowalczyk characterizes Detective Visnaw's description of the images as "gratuitous" and believes the detective intended "to communicate"

Page 11 - OPINION AND ORDER

to Investigator Clark his desire that Investigator Clark surreptitiously look for child pornography while legally reviewing the computers for evidence of identity theft and forgery. Def.'s Mem. 4.

Detective Visnaw submitted a declaration in which he indicated it was his practice to provide the search warrant to forensic examiners, but not the underlying affidavit, that he does not believe he provided a copy of the affidavit to Investigator Clark, and that he "did not verbally direct Investigator Clark or anyone else to look for evidence of child pornography under the January 3 warrant." Visnaw Decl. ¶ 9. There is no evidence Investigator Clark received and read the affidavit in support of the search warrant. Detective Visnaw's police report corroborates his affidavit testimony. MTS-109, at KOWAL00094 ("I provided Investigator Clark with a copy of the signed warrant.").

In sum, with respect to the arguments set out in this section, Kowalczyk has failed to make a preliminary showing that Detective Visnaw or Investigator Clark, assuming he is subject to the same standard as Detective Visnaw, made a false statement knowingly and intentionally, or with reckless disregard for the truth. Accordingly, Kowalczyk is not entitled to a Franks hearing on the arguments I have rejected in this section.[6]

///

///

---

[6]Kowalczyk requests leave to reopen this motion should he obtain additional discovery supportive of his theory. Counsel should be prepared to discuss whether he has any additional evidence relevant to this motion at the suppression hearing on May 31, 2012.

## CONCLUSION

For the foregoing reasons, Kowalczyk's Motion for a Franks Hearing [167] is denied in part and deferred in part. The government is directed to provide argument and evidence in response to Sections I and II of this Opinion and Order by May 14, 2012. Kowalczyk may respond by May 21, 2012.

IT IS SO ORDERED.

DATED this _____26th_____ day of April, 2012.

_____
Garr M. King
United States District Judge