UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES**, | Criminal Case No. 3:08-95-KI |
| Plaintiff, | OPINION AND ORDER ON <u>PRO SE</u> MOTION TO DISMISS |
| v. | DUE TO SPEEDY TRIAL RIGHTS VIOLATION |
| **ANDREW FRANKLIN KOWALCZYK**, | |
| Defendant. | |

S. Amanda Marshall
United States Attorney
Scott M. Kerin
Gary Y. Sussman
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

<01>

Noel Grefenson, P.C.
Attorney at Law
1415 Liberty Street SE
Salem, OR 97302

       Attorney for Defendant

KING, Judge:

Andrew Kowalczyk is charged in a Superseding Indictment with nine counts of Sexual Exploitation of Children pursuant to 18 U.S.C. §§ 2251(a) and 2251(e).  Although he is represented, he has elected to file pro se a Motion to Dismiss Do [sic] to Speedy Trial Rights Violation [217].  For the following reasons, I deny the motion.

## FACTUAL BACKGROUND

Defendant was arrested by the Puyallup Police in Washington State on December 27, 2007.[1]  He was charged with crimes having to do with identity theft, fraud, and possession of child pornography, and remained in state custody in Pierce County, Washington.

On February 21, 2008, defendant was indicted in the District of Oregon on one count of Sexual Exploitation of Children, in violation of 18 U.S.C. §§ 2251(a) and 2251(e).  The indictment was sealed due to the charges and the ongoing investigation.  A warrant was issued for his arrest.  As a result of the federal case, the Pierce County Prosecutor's Office dismissed the state charges related to possession of child pornography.  The government lodged a federal detainer on the defendant and moved to unseal the indictment on July 22, 2008, which the Court granted the following day.  See Gov't. Mot. to Unseal Indictment [3].

---

[1] I include only those facts that are relevant to this motion.

Page 2 - OPINION AND ORDER

The arrest warrant was returned on July 29, 2009. On that date, defendant made his first appearance in the Western District of Washington. He was advised of his rights, ordered detained, and procedures were undertaken pursuant to Federal Rule of Criminal Procedure 5(c)(3). The case was transferred to the District of Oregon on August 5, 2009. Defendant appeared before a magistrate on August 20, 2009, was advised of his rights and entered a not guilty plea. A trial was set for October 20, 2009.

Since that initial trial setting, the defendant has moved to set over the trial a total of ten times. In each case he either explicitly waived his speedy trial rights by affidavit or by agreement in court. In April 2010, for example, defense counsel reported defendant's feeling "troubled" about the need to set over the trial, but that defendant believed it would be "suicidal to try and press his case in federal court without adequate preparation." Schindler Decl. 2 [38]. In June 2011, defense counsel reported that defendant "insist[ed]" he file a motion to continue the trial. Grefenson Decl. 3 [122]. Defendant himself separately signed and filed a Speedy Trial Waiver in July 2011 acknowledging his awareness of his speedy trial rights and admitting that his wavier was "knowing, voluntary and intelligent." Speedy Trial Waiver [125]. He opined that the continuance was "necessary so that [counsel] can adequately prepare my defense." Id. Defendant most recently moved pro se to continue the trial date 60 days from the currently set date of June 19, 2012. Def.'s Mot. to Continue [207]. He reported that denial of the motion would undermine his right to effective counsel and necessary time to prepare for his defense.

From the time of his initial appearance to the present, defendant has had a total of seven attorneys. He was initially represented by two attorneys from the Federal Public Defender's Office, who asked to withdraw (over defendant's objection) in December 2009. The Court

Page 3 - OPINION AND ORDER

appointed a CJA Panel attorney on December 16, 2009, and appointed co-counsel on July 23, 2010 to assist in preparing and filing pre-trial motions. Both attorneys moved to withdraw on October 15, 2010, and the Court appointed two counsel from the CJA Panel to replace them. On March 22, 2011, the Court denied their motion to withdraw, but granted their second motion on May 9, 2011. Defendant's current counsel was appointed on May 9, 2011. All of defendant's past attorneys expressed experiencing conflicts with defendant and most shared their belief that defendant no longer felt confident in their ability to represent him.

On February 7, 2012, the Court issued a Discovery Order denying in part and granting in part defendant's Motion to Compel discovery. Although the Court did order the government to respond to some of the requests, the government had already complied with many of them and it had no obligation to produce materials for the vast majority of the remaining requests. Instead, the Court directed defendant to obtain the materials pursuant to Rule 17(c) subpoenas.

On March 21, 2012, the grand jury returned a Superseding Indictment, charging defendant with nine counts of Sexual Exploitation of Children under 18 U.S.C. §§ 2251(a) and 2251(e).

In the present motion, defendant expresses unhappiness with the efforts of his past counsel, the amount of work he and his father have personally undertaken and paid for, his treatment in detention, the government's failure to promptly respond to discovery requests, and the Court's decision to place this case on a "fast track[.]" Def.'s Mot. 7. He believes his past attorneys were "biased by the charges" and would not work on his case, that jail staff "hate him and are coercive to the lawyers," and that past waivers were "forced[.]" Id. at 8, 11. He also complains that "current counsel is being severely rushed into completing unreasonable deadlines

set by this court" and that his current counsel "still has not had enough time do [sic] to problems with discovery from prosecution and the governments involved." Id. at 13.

Finally, defendant asserts that he has had insufficient time to complete this motion to dismiss and requests more time to attempt to meet the four prongs necessary to prove a constitutional speedy trial violation.

## LEGAL STANDARDS

"The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." Doggett v. United States, 505 U.S. 647, 651 (1992). In order to trigger the right to a speedy trial evaluation, the defendant must show "that the period between indictment and trial passes a threshold point of 'presumptively prejudicial' delay." United States v. Beamon, 992 F.2d 1009, 1012 (1993) (quoting Doggett, 505 U.S. at 652).

Then, if the defendant passes the threshold test, under Barker v. Wingo, 407 U.S. 514 (1971), the Court must undertake a four-part balancing test inquiry consisting of the following factors: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530. No single factor may support a finding that the speedy trial right has been violated. United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008).

## DISCUSSION

Defendant asserts a constitutional violation of his speedy trial rights.

Defendant has passed the "presumptively prejudicial" threshold in that he was indicted in February 2008, and he has not been tried as of May 2012. The Supreme Court has found delays between indictment and trial of about one year to be "presumptively prejudicial." Doggett, 505

Page 5 - OPINION AND ORDER

U.S. at 652, n.1.  Further, there is no question that the length of delay weighs in favor of finding a speedy trial violation.

However, the reasons for the delay, which is the second factor, weigh heavily against finding a speedy trial violation.  The question here is whether it is the government or the defendant who is more to blame for the delay.  Vermont v. Brillon, 129 S. Ct. 1283, 1290-91 (2009).  As an initial matter, the delay between defendant's indictment and his initial appearance on the federal charges was approximately 17 months.[2]  The government's delay in bringing defendant to federal court is unexplained, but there is no evidence it was something more than negligence on the government's part.

Nevertheless, defendant knew of the indictment five months after it was returned, as soon as it was unsealed.  Def.'s Mot. 3; Gov't. Mot. to Unseal Indictment 2 (copies provided to defense counsel and "any other attorney who may represent the defendant within Oregon and/or Washington, any court handling matters related to the defendant, Pretrial Services, and any law enforcement agencies and prosecuting office").  Indeed, even before the federal indictment was filed, defendant had retained an attorney to represent him in both the state matters and in the "[f]ederal investigation of potential charges from discovery of images underlying the possession [of child pornography] charges . . . and handling those charges in federal court in the Western District of Washington."  Def.'s Pro Se Ex. MTS-285 (letter from defense counsel dated Feb. 6, 2008).  Defendant argues only that he was not given the opportunity to invoke his federal speedy trial rights during this time, not that he actually did invoke them.  Def.'s Mot. 3; United

---

[2]It appears that the time the indictment was sealed counts against the government.  United States v. Ixta, No. 08cr00988 BTM, 2012 WL 896154, at *2-3 (S.D. Cal. Mar. 14, 2012) (discussing state of the law and citing cases).

Page 6 - OPINION AND ORDER

States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) (knowing of charges, but failing to answer to them, "further undermines his speedy trial claim").

Additionally, although the government failed to comply promptly with some discovery requests, the vast majority of discovery sought by the defendant was obtainable only via Rule 17(c) subpoenas. Notably, defense counsel was able to file his opening brief in support of defendant's Motion to Suppress before any hearing was held on defendant's Motion to Compel Discovery. Defendant's own pro se motion is largely complete; he represents that only three arguments rely on outstanding discovery requests.

Indeed, the bulk of the delay–a little less than three years–is largely attributable to defendant's frequent changes in counsel and the need to prepare complex pre-trial motions. Vermont, 129 S. Ct. at 1292 (defense counsel's "inability or unwillingness . . . to move the case forward" may not be attributable to the government).[3] In fact, defendant strongly resisted my efforts to move the case along as quickly as possible, and even now complains in his motion about the Court's "fast tracking" the case. Def.'s Mot. 7, 11, 13. Defendant cannot demand both the time to adequately prepare pretrial motions and to prepare for trial, while at the same time assert a violation of his speedy trial rights. The second factor, therefore, weighs against finding a speedy trial violation.

The third factor also weighs decidedly in favor of the government. Defendant expressly waived his right to a speedy trial a total of ten times and even filed his own pro se motions to continue the proceedings in this case. Although at one point in his motion he alleges his consent

---

[3]There is no evidence of a "systemic breakdown in the public defender system." Vermont, 129 S. Ct. at 1293.

was "forced," it is clear he does not assert that defense counsel waived defendant's rights without his consent; rather, he argues that the government's failure to provide discovery, his counsels' bias against him because of the charges, or his attorneys' failure to produce work "forced" him to consent to the trial continuances. If a defendant asserts his speedy trial rights after requesting continuances, this factor does not weigh in favor of finding a speedy trial violation. United States v. Corona-Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007).

As for the fourth factor, the Supreme Court examines three interests the speedy trial right is intended to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. There is no doubt defendant has found his detention uncomfortable and anxiety-inducing. However, the "most serious" factor I must consider is whether the delay has impaired his defense. Id. On this factor, defendant contends that witnesses have forgotten facts, but these "contentions regarding alleged defects in witness testimony or lost evidence amount at most to speculation and fail to demonstrate any actual prejudice to his defense." United States v. Tanh Huu Lam, 251 F.3d 852, 860 (9th Cir. 2001).

Balancing the factors, I find no Sixth Amendment speedy trial violation occurred. The government was not the sole cause of the delay, defendant has waived his speedy trial rights a total of ten times over the course of this case, and has repeatedly urged the Court for more time to draft pretrial motions and to prepare for trial.

///

///

Page 8 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, Kowalczyk's pro se Motion to Dismiss Do [sic] to Speedy Trial Rights Violation [217] is denied.

IT IS SO ORDERED.

DATED this    14th    day of May, 2012.

     /s/ Garr M. King
     Garr M. King
     United States District Judge