UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES**,

        Plaintiff,

v.

**ANDREW FRANKLIN KOWALCZYK**,

        Defendant.

Criminal Case No. 3:08-CR-00095-KI

OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

S. Amanda Marshall
United States Attorney
Scott M. Kerin
Gary Y. Sussman
Assistant United States Attorney
1000 SW Third Avenue, Suit 600
Portland, OR 97204

    Attorneys for Plaintiff

Page 1 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

Noel Grefenson, P.C.
Attorney at Law
1415 Liberty Street SE
Salem, OR 97302

        Attorney for Defendant

Andrew Kowalczyk is charged in a Superseding Indictment with nine counts of Sexual Exploitation of Children. Pending before me is Kowalczyk's Pro Se Motion for a Franks Hearing [201],[1] challenging statements made in Puyallup Police Detective Jason Visnaw's December 27, 2007 and January 3, 2008 search warrant affidavits, as well as the statements made by FBI Special Agent Diana Kimes in her February 6, 2008 search warrant affidavit. For the following reasons, I deny the motion.

## FACTUAL BACKGROUND

Just after midnight on December 27, 2007, a Des Moines, Washington police sergeant named Sergeant David Bell pulled a black Lincoln Town Car over for traffic infractions.[2] When he ran the license plate, the car registered as belonging to Alex Craciun. Sergeant Bell approached the car and asked for a driver's license, registration and insurance. The driver said he did not have any documents or identification. When Sergeant Bell asked the driver if he was the owner of the car, the driver hesitated. He said his name was "Walter George," gave his date of birth, said that he did not have a Washington license, but did have an Ohio license. He said his

---

[1]Kowalczyk is represented by an attorney, but I gave him permission to file additional motions his counsel declined to prepare on his behalf.

[2]I discuss only the events leading up to Kowalczyk's arrest that are relevant to this motion, and based only on the documents submitted in support of this motion, Kowalczyk's motions for a suppression hearing, and his motion to compel discovery. Many of the events have been the subject of recent, extensive suppression hearings, which will be the subject of a later opinion.

Page 2 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

ID was in his "motel room," which he then identified as the Northwest Motor Inn in Puyallup, Washington.

Sergeant Bell returned to his police car and ran a computer check on the name and date of birth the driver had given, resulting in a "no computer record found" response. No record was found of an Ohio driver's license in that name, either.

Sergeant Bell returned to the Lincoln and informed the driver he was unable to locate a record of him in Washington or Ohio. He asked the driver to step out of the car. The driver did not move. Sergeant Bell repeated his instruction to step out of the car. Sergeant Bell then attempted to open the driver's door, but it was locked. At that point, the driver quickly put the car in gear and drove off. Police pursued the Lincoln but stopped when they realized they could not overtake it or deploy spikes.

Sergeant Bell asked the Puyallup police to see if the black Lincoln was parked at the Northwest Motor Inn (the motel is in Puyallup's jurisdiction). Puyallup police reported that the Lincoln was not there. At about 4:00 a.m., Puyallup police saw the Lincoln parked outside rooms 121 and 122. A Puyallup officer, Scott Lien, obtained the registered guest's information associated with the 1999 black Lincoln from a motel employee; he "noted the picture I.D. (Texas Driver's) showing the suspect vehicle to be associated with, Benny S. Mazzola (DOB 04-18-72) currently renting the room at #122." MTS-105, at KOWAL00011.

Officer Lien then contacted Sergeant Bell, who explained the Lincoln had been seen several times within a few hours in a known prostitution area. He described his interaction with the driver, the Lincoln's eluding, and asked the Puyallup police to remain with the Lincoln until it was impounded. Officer Lien learned from dispatch that the name "Benny Mazzola" was a

Page 3 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

known alias for Andrew Kowalczyk, who had an active arrest warrant from Beaverton, Oregon for failure to appear on an Unlawful Use of a Weapons charge. Kowalczyk's previous arrests consisted of: a weapons violation, Rape in the Second Degree, felony elude, reckless endangerment, and harassment. The records check indicated "Caution Armed and Dangerous."

Beaverton police sent a booking photo of Kowalczyk to Puyallup. Puyallup faxed the booking photo to Sergeant Bell. Sergeant Bell noted that the black and white fax was not good quality, that the photo did not show any facial hair, and the subject had a different hair style, but he was 90 percent sure that the person in the photo was the driver of the Lincoln.

Officer Lien compared the motel's driver's license photo of "Benny Mazzola" with a Pierce County, Washington booking photo (taken when Kowalczyk was arrested on the Second Degree Rape charge), and with the Beaverton police booking photo, and confirmed that the pictures matched.

The Des Moines police towed the Lincoln to its police department around 6:00 a.m.

Puyallup officers knocked on the motel door and called Kowalczyk's room, but got no response.

At 7:00 a.m., Sergeant Bell asked Sergeant Dave Mohr to prepare an affidavit for a search warrant to look for evidence in the Lincoln.

At 8:17 a.m., Puyallup Officer Adam Kleffman, who was watching room 122 from across the street, saw a taxi van pull into the motel parking lot. As the cab pulled in, the door to room 122 opened and a white male with shoulder length brown hair and a brown goatee looked out. The room's occupant started carrying bags from the room to the taxi. He made three trips from the room to the taxi. Officer Kleffman drove closer, got out of his police car, and waited for the

Page 4 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

room's occupant to come back out of his motel room.

At about 8:19 a.m., the room's occupant exited his room. Officer Kleffman approached the man with his gun drawn and held at a low-ready position, identified himself as a police officer and ordered the man to the ground. The man turned and looked at the police officer, but did not immediately comply. Officer Kleffman repeated his statements and the man complied. Officer Kleffman asked him if he was Andrew Kowalczyk, and the man answered "yes."

Puyallup Officer Dave Temple placed Kowalczyk in the back of his patrol car.

While Kowalczyk was placed in the back of the police car, officers undertook a quick protective sweep of room 122 to confirm no one else was in the room. Kowalczyk had left the door to the room open. From the open door, Detective Visnaw could see a desktop computer, a flat screen computer monitor, a box for a computer printer, a box for a computer scanning device, and a backpack. Finding the room empty of people, the officers left. They did not seize or remove anything.

While officers were conducting the cursory search of the motel room, Officer Joseph Pihl advised Kowalczyk of his Miranda rights; Kowalczyk invoked his right to remain silent.

The Puyallup Police then searched Kowalczyk's luggage. Officer Pihl found a digital camera in one of the bags, turned it on and viewed images depicting sexually explicit conduct involving a very young child. At the time of Kowalczyk's arrest, police seized an Acer laptop computer, cellular telephones, iPods, a Palm Pilot, multiple computer hard drives, a thumb drive, memory sticks, two digital still cameras, a digital video recorder, miniDV video tapes, and various items used to manufacture counterfeit credit or identification cards.

That day, Detective Visnaw applied for a search warrant to search the motel room for

additional evidence of fraud; Kowalczyk challenges the affidavit in support of this December 27, 2007 search warrant.  Pursuant to that warrant, officers seized two computer printers, a digital tablet (to import signatures into a computer), a computer monitor, a desktop PC without a hard drive, and some miscellaneous documents.  Detective Visnaw subsequently sought and obtained a warrant, on January 3, 2008, to search all of Kowalczyk's electronic devices obtained from the motel and from the search incident to arrest, except the digital camera on which the sexually explicit photographs were found.  To the extent the January 3 warrant affidavit repeats any of the statements Kowalczyk challenges in the December 27 warrant, he reiterates those arguments.

      Meanwhile, Des Moines Sergeant Dave Mohr applied for and received a search warrant on December 31, 2007 to search the Lincoln's passenger compartment for evidence of eluding police.

      On January 3, 2008, Investigator Clark called Detective Visnaw and reported that he had only examined a small portion of the Acer laptop's hard drive and he had encountered images depicting minors engaged in sexually explicit conduct.  Detective Visnaw obtained another search warrant on January 4, 2008 to examine the seized digital devices for evidence of child pornography and Investigator Clark continued his search.

      Later that day, Investigator Clark again contacted Detective Visnaw and reported recovering images and video of minors engaged in sexually explicit conduct.  The pictures did not show the offender's face, but one showed a silver watch on his wrist.

      On January 5, 2008, Puyallup police issued a press release depicting four adults whose pictures were found on Kowalczyk's computer, hoping that someone would come forward who could identify the children.

Page 6 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

That day, Detective Visnaw also applied for and received another warrant to search Kowalczyk's personal property stored at the jail, specifically for watches and rings, to compare with the images. After obtaining the warrant, he found a "Swiss Army" silver watch with diamonds or fake diamonds, which appeared to be the same type of watch as depicted in the photographs.

On January 6, 2008, a woman later determined to be the mother of three victims called into the tip line. Her sister had seen the news coverage in the Portland area. She thought the children were hers. She asked for the name of the suspect and Detective Visnaw told her Kowalczyk. She began "to sob uncontrollably," said she knew him, and explained how she knew him. MTS-109, at KOWAL00097. She said that Kowalczyk had watched her children for her at times from approximately 5-6 months until they were 2-3 years old.

On January 7, 2008, Detective Visnaw learned that Kowalczyk sometimes went by the name "Jessie."

Portland Police Detective Darrell Miller was assigned to the case after learning that the children were from the Portland area. He attended a CARES Northwest evaluation for the three listed victims on January 11 and 18, 2008. The oldest one indicated "that on one occasion suspect asked her to put a hot dog inside of her." MTS-114, at KOWAL03510. Detective Miller attempted to contact the victims' mother on multiple occasions and finally spoke with her on January 22, 2008. He asked her questions about how Kowalczyk and she had met, where they stayed, and when he had access to her children. She confirmed he, at one point, had stayed at a motel under the name of "Jessie." At the conclusion of the conversation, Detective Miller told her he had a number of non-pornographic pictures to show her and asked her if she would be

Page 7 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

willing to identify where the pictures were taken. Detective Miller reported that she replied that she "would be willing to do so, and she stated she would do whatever I needed her to do." MTS-114, at KOWAL03516.

Detective Miller met with the mother the next day at 4:15 pm. She came with an advocate from Self Enhancement Inc., who explained she was a domestic violence advocate who had been working with the mother. She was trying to get the mother into an inpatient alcohol/drug treatment program. Detective Miller reported, "It is notable that during this meeting, ESSIE BUTLER smelled strongly of alcohol as if she had already drunk alcohol during the day." Id., at KOWAL03517. She identified a number of the locations and people. After approximately one hour, after the interview had concluded and after the mother had left the room, the advocate told Detective Miller that the advocate thought the mother was drunk and she was upset with the mother. She would try to impress upon the mother to come to the next meeting sober.

The mother and advocate met with Detective Miller the next day, and again the mother identified several of the locations from photographs. The advocate indicated that the mother would probably get into an inpatient drug treatment program the following week, and the mother told Detective Miller she would be very willing to meet with him again "and talk about anything that I needed to ask her about. She said she would do anything she needed to do in order to ensure that suspect stayed in prison for a long time." Id., at KOWAL03520.

On February 6, 2008, FBI Special Agent Diana Kimes obtained a federal search warrant to take photos of Kowalczyk's body to compare with the photos on the digital media. She described the sexually explicit photographs, the broadcasts of clean photographs by the media

Page 8 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

which led to the discovery of the mother, the interview of the mother identifying Kowalczyk as a person who had contact with her children, and the information from Detective Visnaw about the watch.  Agent Kimes also described seeing moles on the body of the offender.   The pictures of Kowalczyk's body were taken on February 7, 2008.  Kowalczyk challenges this warrant.

## LEGAL STANDARDS

In Franks v. Delaware, 438 U.S. 154, 164-65 (1978), the Supreme Court held that intentionally and recklessly submitting false statements in a warrant affidavit violates the Fourth Amendment.  A defendant is entitled to a Franks hearing if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." 438 U.S. at 155-56.  To meet his burden, the defendant "should point out specifically the portion of the warrant affidavit that is claimed to be false" and submit a detailed offer of proof.  Id. at 171; United States v. Kiser, 716 F.2d 1268, 1271 (9th Cir. 1983).  Allegations of negligence or innocent mistake will not suffice. Franks, 438 U.S. at 171.  Additionally, the defendant must challenge the affiant's statements, not the veracity of his informant.  Kiser, 716 F.2d at 1271.

If perjury or reckless disregard for the truth is established by a preponderance of the evidence, the court must set the "false" material aside and determine whether the "remaining content is sufficient to establish probable cause."  Franks, 438 U.S. at 156.  If not, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  Id.  Courts have employed a similar analysis when a defendant alleges the warrant affidavit contains material omissions.  United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985).  Material omissions should be inserted in the affidavit

and examined to see whether probable cause remains.

## DISCUSSION

Kowalczyk's pro se motion challenges statements made in three search warrants: the December 27, 2007 search warrant to search and seize items from the motel room; the January 3, 2008 search warrant, to the extent it repeats misstatements from the December 27 warrant affidavit; and the February 6, 2008 search warrant to search his body.

I.     Detective Visnaw's December 27, 2007 and January 3, 2008 Warrants

Kowalczyk argues that the following false representations and omissions, individually and together,

> falsely paint[] Kowalczyk as a person who uses "yet another" alias (Craciun); claims Kowalczyk is wanted on a warrant for a firearm offense when instead that warrant relates to a failure to appear; fails to alert the magistrate that the Des Moines Police Department itself was unsure whether Kowalczyk was their suspect; repeatedly references Kowalczyk as the person who drove the vehicle and occupied the motel room yet omits information from which the magistrate can make that determination; falsely claims to have seen a backpack in plain view inside the motel room when in fact that backpack is outside of the room; fails to disclose information which demonstrates that the majority of the evidence which might support probable cause derived from an illegal search incident to arrest; and, fails to provide any information that Kowalczyk used a fictitious name belonging to an actual person.

Pro Se Mem. 4-5.

None of the statements rise to the level of perjury or reckless disregard for the truth by a preponderance of the evidence. Accordingly, no Franks hearing is warranted.

Specifically, in his affidavit to support his request for a warrant to search and seize evidence from the Northwest Motor Inn, Detective Visnaw described the traffic stop, the driver's giving a false name, and the subsequent successful elude. He then reported, "Prior to fleeing,

Page 10 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

Kowalczyk told the officer that he was living at the NW Motor Inn, a motel in Puyallup, WA. Des Moines PD believed the suspect's name to be Alex Craciun, but it was later learned that this is yet another alias for Kowalczyk." MTS-119B, at KOWAL00101. It is true that Craciun was not an alias, but the previous owner of the car. However, removing the reference does not negate probable cause. Without the reference, the judge still knew that the driver gave a false name on a traffic stop and knew about the counterfeit items found during the search incident to arrest.

      Detective Visnaw reports that "Des Moines PD indicated that they had probable cause to arrest Kowalczyk, and Kowalczyk was also found to have an active felony warrant out of the State of Oregon for an incident involving a firearm." MTS-119B, at KOWAL00101. Kowalczyk points out that the active felony warrant was issued on a failure to appear on an incident involving a firearm. The incomplete reference to the character of the underlying warrant is immaterial since the underlying charge was indeed a firearms incident. Kowalczyk also argues that Detective Visnaw failed to include the fact that the warrant had not been confirmed until later that day, but whether a failure to confirm renders the arrest unconstitutional is the subject of the pending motion to suppress. As a result, I need not decide that question here. Additionally, the search warrant did not rely on the nature of the Oregon warrant, but rather was based on items found during the search incident to arrest.

      Detective Visnaw indicates that officers found "Kowalczyk's vehicle" at 4:00 a.m. at the Northwest Motor Inn, and throughout the affidavit he refers to the driver of the vehicle that eluded as "Kowalczyk." Kowalczyk initially argued that Detective Visnaw failed to indicate how police knew he was the driver and that it was his vehicle; however, he *wa*s the driver of the car and *was* the person who eluded police so any failure to include this background cannot be the

Page 11 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

subject of a Franks hearing.  Kowalczyk concedes this point in his Reply.  Reply 3.

Kowalczyk challenges the fact that Detective Visnaw did not indicate in his search warrant affidavit that Kowalczyk was sitting in the back of the patrol car when the search incident to arrest took place.  I need not comment on the validity of the search incident to arrest, which is the subject of separate suppression motions.  If Kowalczyk is successful in his argument that the search incident to arrest was unlawful, what police learned from that search will be stricken from subsequent affidavits and need not be the subject of a Franks hearing.

Kowalczyk complains that Detective Visnaw incorrectly indicated he could see a backpack, among other items, from outside the open door of the motel room.  Kowalczyk contends that the warrant return fails to mention seizure of a backpack from the motel room and that Puyallup Officer Pihl notes seeing a black backpack on the ground outside of the motel room.  The government points out the search warrant return mentions two black backpacks and, furthermore, whether Detective Visnaw saw a backpack inside the room or not is irrelevant to probable cause.  I agree.

Finally, Kowalcyzk argues that Visnaw failed to include information from which an issuing judge could determine whether defendant "provided a false name which belonged to a real person or a fabricated name."  Pro Se Mem. 4.  Use of a real person's name is an element of identity theft.  State v. Sells, 271 P.3d 952, 955-56 (Wash. App. 2012) (citing State v. Berry, 117 P.3d 1162 (Wash. App. 2005)).  Kowalczyk does not argue that the names were fictitious and Detective Visnaw lied by saying the victims were real people.  Furthermore, the affidavit must merely provide a fair probability to believe evidence of the crime is likely to be found in the place to be searched.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Indeed, it need not

Page 12 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

demonstrate each and every element of the offense being investigated because "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232.

In sum, Kowalczyk fails to meet his burden and is not entitled to a Franks hearing on Detective Visnaw's affidavits.

II.     Agent Kimes' February 6, 2008 Warrant

Kowalczyk identifies the following false statements in Agent Kimes' warrant affidavit: (1) Kowalczyk was arrested on an Oregon warrant, but does not indicate that it was confirmed; (2) Kowaczyk's warrant was for elude and presenting false identification, but the Oregon warrant was for a failure to appear; (3) does not report that Kowalczyk was in custody during the search incident to arrest; (4) falsely states the January 3 warrant was for motel room and property, but the January 3 warrant was only for the motel room and not the property in custody at the police station; (5) that Kowalczyk had been using the aliases of Jessie Wilfong and Benny Mazzola and that police learned this from the bags, when in fact they learned it from Investigator Clark; (6) Investigator Clark found images on January 3, but he actually found them on January 4; (7) failed to inform the judge that Detective Visnaw and Officer Miller lead the witness Essie Butler in identifying Kowalczyk as the perpetrator and that she said she would do whatever needed to be done to ensure Kowalczyk stayed in prison; (8) failed to disclose that when the officers spoke with Essie Butler, she was inebriated; (9) that Kimes found a bedspread at the Madison Suites hotel that matched the appearance of a comforter depicted in one of the child pornography images, when in fact the comforter was reported as only being "possibly similar but not exact match;" (10) that the perpetrator was wearing a red shirt with white lettering that

Page 13 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

matched the shirt Kowalczyk is seen wearing in some of the other clean photos; (11) that Kowalczyk's silver watch was "identical" to a watch seen in the images, when Visnaw reported the watch was not clear in the child pornography; (12) that one of the victims is reported to be "articulate" but Kimes reported her as being unwilling or unable to provide information; and (13) that the 11-year-old victim reported "one day when I was with my mom's friend Andrew, he told me to put a hotdog in my private and I told him no" but Kimes reported "KNF3 has disclosed that Mr. Kowalczyk tried to place a hotdog in her vagina." MTS-124B.

      Although Kowalczyk has identified a number of inaccuracies, none of them add up to much of anything. Whether or not the Oregon warrant was confirmed at the time of arrest, what the Oregon warrant was for, what the January 3 warrant covered, and when the images were found are simply insignificant background details unrelated to the purpose of the search warrant.

      Where I must look more closely is at Agent Kimes' statements linking Kowalczyk to the perpetrator depicted in the child pornography, as that is the focus of the search warrant. Kowalczyk complains Agent Kimes lied about how police learned Jessie Wilfong was an alias. It is not clear from the materials before me how police learned the full name, but as early as January they learned from the mother and, separately from the father of one of the victims, that Kowalczyk referred to himself as Jessie. Clark was searching the electronic media for the name by February because he was asked to do so. There is no evidence Agent Kimes' inclusion of the name in her report is the result of perjury or reckless disregard for the truth. In any event, other evidence connected Kowalczyk to the Madison Suites Hotel, for purposes of probable cause, such as the mother's reports placing him there, the similar backgrounds in the pictures, and the similar comforter.

Page 14 - OPINION AND ORDER ON PRO SE MOTION FOR A <u>FRANKS</u> HEARING

Kowalczyk faults Agent Kimes for failing to include a more extensive summary of police interactions with the mother, but there is no evidence the mother was influenced by media reports or her interactions with the police.  In fact, she had not personally seen the media reports herself.  Her statements agreeing to assist in the investigation do not suggest bias; Kowalczyk points to nothing Agent Kimes should have included that would indicate the mother was motivated to lie about Kowalczyk's access to her children around the time the sexually explicit pictures were taken.

Kowalczyk's most troubling allegation, with respect to police interaction with the mother, is that Agent Kimes failed to disclose the mother's alcohol and drug abuse and the fact that the mother was, as Kowalczyk puts it, "extremely intoxicated" and in a "state of extreme inebriation" during the interview with police.  Pro Se Mem. 7.  As an initial matter, Kimes did disclose in her affidavit that the mother "deals with significant drug and alcohol issues."  MTS 124, KOWAL04202.  Additionally, Detective Miller reported only that, during in-person interviews of the mother, which took place after a lengthy telephone interview, the mother "smelled strongly of alcohol as if she had already drunk alcohol during the day."  MTS-114, at KOWAL03517; see also id. at KOWAL03518 ("definitely smelled strongly of alcohol").  Accordingly, he did not indicate she was "extremely intoxicated" or in a "state of extreme inebriation."  Furthermore, Kowalczyk notably neither disputes the mother's reports, nor does he dispute Agent Kimes' summary of the mother's statements.  Although it would have been prudent of Agent Kimes to include Detective Miller's observations about the mother's alcohol use, as it goes to the issue of the mother's reliability, Kowalczyk does not demonstrate any material misstatements or omissions that undermine the probable cause finding.  This is

Page 15 - OPINION AND ORDER ON PRO SE MOTION FOR A FRANKS HEARING

particularly true given the other corroborative facts in the affidavit.

Kowalczyk also challenges several characterizations Agent Kimes made about the evidence indicating Kowalczyk is the perpetrator depicted in the images; again, however, any overstatements about the strength of the evidence do not undermine Agent Kimes' overall demonstration of probable cause.  For example, even if Agent Kimes had stated only that the comforter was similar to one depicted in an image, and that the watch only appeared to be the same, these details together provide ample probable cause to issue the warrant given all of the other corroborative information in the affidavit.  Further, although the government has not contradicted Kowalczyk's statement that he is not depicted in any non-pornographic images wearing the Blaze shirt, the government does report the pornographic images at issue partially depict Kowalczyk's face.  Together, the evidence provides the "fair probability" that physical markings on Kowalczyk match those on the perpetrator.  <u>Gates</u>, 462 U.S. at 238.

Finally, Kowalczyk attacks Agent Kimes' report that one of the victims "has been unable or unwilling to provide any more information" because she is described as "articulate" elsewhere.  This is not a false statement or omission.  Agent Kimes did, however, inaccurately quote the report the victim made about her interaction with Kowalczyk.  Nevertheless, the inaccuracy is simply not material; regardless of the exact interaction the victim had with Kowalczyk, for purposes of probable cause, the judge learned that Kowalczyk was likely sexually abusing children and that confirmation of his identity could be obtained by photographing his body.

///

///

///

## CONCLUSION

For the foregoing reasons, Kowalczyk's Pro Se Motion for a Franks Hearing [201] is denied.

IT IS SO ORDERED.

DATED this        18th        day of June, 2012.


　　　　　　　　　　　　　　　　　　  /s/ Garr M. King
　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　United States District Judge