UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                  Plaintiff,<br><br>    v.<br><br>**ANDREW FRANKLIN KOWALCZYK,**<br><br>                  Defendant. | No. 3:08-cr-00095-MO<br><br>ORDER FOLLOWING<br>PRETRIAL CONFERENCE |

On November 14, 2018, the Court conducted a Pretrial Conference at which it addressed the parties' pretrial motions, reviewed draft jury instructions and a draft verdict form with the parties, discussed the manner of *voir dire*, and heard for-cause challenges to prospective jurors on the basis of jurors' responses to the Prospective Juror Inquiry. In addition, the Court conducted a hearing on November 16, 2018, at which the Court received foundational testimony from Special Agent Josh Findley regarding his ability to identify Defendant's voice.

After reviewing the record and hearing argument at the Pretrial Conference, the Court issues the following Order:

I. **Defendant's Motions to Suppress**

Defendant, through counsel, filed a Motion to Suppress [809] in which Defendant contends: (1) the inventory search that the Court relied on in the inevitable discovery findings in

1 – ORDER FOLLOWING PRETRIAL CONFERENCE

its August 3, 2012, Opinion and Order, was pretext for an unconstitutional evidentiary search; (2) evidence found in Defendant's storage unit should be suppressed on the basis of an unconstitutionally prolonged seizure of that storage unit before law enforcement obtained a search warrant; and (3) warrantless examinations of data found on Defendant's digital devices after the initial search pursuant to the January 4, 2008, search warrant were unconstitutional. Defendant's first two arguments amount to motions to reconsider the Court's August 3, 2012, Opinion and Order [317]. Defendant's argument regarding the subsequent searches of his digital data presents a new basis for suppression that was not previously raised.

The Court has also considered two *pro se* Motions to Suppress. Defendant filed a Motion to Suppress Evidence [868] regarding the same inventory-search issues raised by counsel, and a Motion to Suppress Evidence [871] regarding the delay in the search of his storage unit. After considering the parties arguments and reviewing the record, the Court declines to reconsider its August 3, 2012, Opinion and Order, and denies Defendant's Motions.

The Court adheres to its finding that the search in the motel parking lot was a valid search incident to arrest under then-existing law, and that subsequent searches were permissible after the earlier search incident to arrest. *See* Op. Or. [317], at 31–38. The Court also adheres to its finding that even if the search incident to arrest was not valid or if the search of the luggage exceeded the scope of a search incident to arrest, the evidence found in the luggage would inevitably have been discovered during an inventory search pursuant to Puyallup Police policy. *See* Op. Or. [317], at 37–43. The Court emphasizes that no inventory search took place in this case. The searches of Defendant's luggage after the search incident to arrest in the motel parking lot were explicitly evidentiary searches that were justified by the earlier search incident to arrest. Op. Or. [317], at 37. *See also United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015)

(subsequent warrantless searches of containers that remained in the legitimate uninterrupted possession of the police are permissible as long as the initial search was valid). Because officers did not conduct any inventory search in this case, there is not any possible record from which the Court could find an inventory search was pretext for an evidentiary search such that it would be unconstitutional under *United States v. Orozco*, 858 F.3d 1204 (9th Cir. 2017), and *United States v. Johnson*, 889 F.3d 1120 (9th Cir. 2018).

The Court also adheres to its finding that evidence found during the March 11, 2008, search of Defendant's storage unit should not be suppressed even though the two-month delay between the seizure of the storage unit and its search was unreasonable and unconstitutional. Defendant contends a draft search warrant affidavit for the storage unit created by detectives in January 2008 indicates officers made a deliberate, tactical decision to delay the search of the storage unit while law enforcement developed additional probable cause to justify the search of the unit. This inference, however, is not plausible. By the time officers seized the storage unit by overlocking it on January 11, 2008, they had ample evidence of identify theft, fraud, counterfeiting, and child-pornography offenses to obtain a search warrant for the storage unit. Although the warrant application for the March 11, 2008, search may have contained greater detail than the early-January draft application, that is an obvious outgrowth of the reality that the investigation was further along in March than it was in January and does not undermine the finding that law enforcement had ample probable cause to search the storage unit in early-January. Moreover, there is not any apparent tactical advantage for the investigators to have drawn from the delay in the search of the storage unit. It is far more likely that the task of obtaining a search warrant and conducting the search simply fell through the cracks of an investigation that was rapidly expanding both in scope and in the number of agencies involved

and was focused primarily on identifying additional victims of the alleged abuse. Although the two-month delay before the search of the storage unit was unreasonable, as the Court found in its August 3, 2012, Opinion and Order, the record supports a finding that the delay was the result of negligence, and not gross negligence, systemic negligence, or deliberate law-enforcement inaction.

Finally, the Court rejects Defendant's argument that subsequent examinations of the data derived from the January 4, 2008, search of Defendant's digital devices were unconstitutional. The initial search of Defendant's digital devices was justified by two facially valid search warrants issued January 3 and January 4, 2008. Subsequent re-examinations of the forensic images taken of the data stored on Defendant's digital devices were permissible, and the sharing of that data among various law-enforcement agencies was lawful. *See Cook*, 808 F.3d at 1199; *United States v. Joseph*, 829 F.2d 724, 728 (9th Cir. 1987) (exchange of information between law-enforcement agencies is not a "search").

On this record, therefore, the Court DENIES Defendant's Motion to Suppress [809] filed by counsel, and his *pro se* Motions to Suppress [868, 871].

## II.    Defendant's Motions *in Limine*

The Court GRANTS in part and DENIES in part Defendant's Motions *in Limine* [848] as set out below. To the extent that any party believes that a party-opponent has opened the door to evidence that the Court excludes, that party must raise the matter with the Court outside the presence of the jury before seeking to introduce any such evidence.

The Court grants in part and denies in part Defendant's first motion *in limine*. Pursuant to Order [894], the Court conducted an exhibit-by-exhibit assessment of the alleged child-pornography images and videos that the government intends to introduce. The Court records its

exhibit-specific rulings in an Order filed herewith and finds the admission of images and videos consistent with those rulings is neither unduly cumulative nor unfairly prejudicial to Defendant.

The Court grants in part and denies in part Defendant's second and third motions *in limine*. Subject to the Court's satisfaction that the government can make a sufficient showing that its evidence indicates an attempt by Defendant to distribute or to share image(s) derived from the abuse alleged in the Superseding Indictment (or, at least, an intent to do so), the Court concludes evidence of Defendant's attempts to share such image(s) is highly probative of Defendant's intent and motive as it relates to Defendant's specific intent to create visual depictions of the abuse. The Court also finds such evidence is relevant to demonstrate that Defendant was the individual who created the images, and that the probative value of such evidence substantially outweighs any unfair prejudice.

In light of the admissibility of the evidence of Defendant's attempt to share at least one image of the charged abuse, the Court also finds the probative value of very limited evidence of Defendant's possession of child pornography unrelated to the charged abuse substantially outweighs the unfair prejudice of the introduction thereof. The Court, in particular, finds the unfair prejudice of limited evidence of other child pornography is diminished substantially when one takes into account that the jury will already be aware of Defendant's attempts to share the child pornography at issue in this case. Defendant's possession of other child pornography is relevant circumstantial evidence of Defendant's motive and intent to produce visual depictions of the alleged abuse because rational jurors could infer Defendant intended to create those images to add to his collection of child pornography. Accordingly, the Court will permit the government to elicit testimony that law enforcement located a collection of child pornography unrelated to the charged abuse on Defendant's digital devices. Unless and until Defendant puts such matters

at issue, however, the Court precludes the government from (1) eliciting testimony about the size of that collection or the number of images contained therein, (2) eliciting descriptions of such images, or (3) displaying such images to the jury.

The Court grants in part and denies in part Defendant's fourth, ninth, and the first and second sub-motions of Defendant's seventeenth motion *in limine*. With respect to matters leading to Defendant's arrest and the search of Defendant's property, the Court will permit the government only to introduce limited evidence that (1) officers were investigating Defendant on an outstanding, unrelated warrant; (2) officers arrested Defendant at the Northwest Motor Inn in Puyallup, Washington; (3) officers searched Defendant's belongings as part of his arrest and pursuant to search warrants; and (4) Defendant used the name "Jesse Wilfong" as an alias. The Court will instruct the jury that the Court has limited the evidence regarding the circumstances of Defendant's arrest to only a brief overview of those matters to save time and to focus on the issues that are central to the case. The Court will also direct the jury not to speculate about other circumstances related to Defendant's arrest or the search of his property.

The Court grants Defendant's fifth motion *in limine*. As the parties agree, the government may not introduce evidence regarding Defendant's alleged sexual assault of adult women unless and until Defendant puts such evidence at issue.

The Court denies Defendant's sixth motion *in limine*. Subject to the Court's review of all alleged child-pornography exhibits under Federal Rule of Evidence 403, the Court finds images of child abuse are admissible as direct evidence of the charged offenses.

The Court grants in part and denies in part Defendant's seventh motion *in limine*. The Court grants Defendant's motion insofar as the Court will conduct an examination outside the presence of the jury of each witness from which the government intends to seek voice-

identification testimony. The Court denies Defendant's motion to the extent that the Court will permit such testimony from the government's witnesses as long as the Court finds the witnesses have a sufficient foundation of knowledge from which to identify Defendant's voice.

The Court grants Defendant's eighth motion *in limine*. As the parties agree, the government may not introduce Defendant's testimony from the suppression hearing unless and until Defendant puts such testimony at issue.

The Court denies as premature Defendant's tenth motion *in limine*. Although there remain outstanding issues related to the government providing its exhibits to Defendant, those matters appear to be the subject of ongoing conferral among counsel. To the extent that issues remains after such conferral, the Court grants Defendant leave to re-raise this matter with the Court.

The Court grants in part and denies in part Defendant's eleventh motion *in limine*. The Court will make a neutral statement to the jury regarding the passage of time between the trial and the events underlying the charges. The Court prohibits the parties from introducing any evidence as to the cause of that delay.

The Court grants Defendant's twelfth motion *in limine*. As the parties agree, the government may not introduce evidence of judicial determinations regarding Defendant's credibility unless and until Defendant puts such evidence at issue.

The Court grants Defendant's thirteenth motion *in limine*. As the parties agree, the government may not introduce evidence of any findings related to Defendant's competency or malingering unless and until Defendant puts such evidence at issue.

The Court grants Defendant's fourteenth motion *in limine*. As the parties agree, the government may not introduce evidence of Defendant's relationships with or feelings about children other than the alleged victims unless and until Defendant puts such evidence at issue.

The Court grants Defendant's fifteenth motion *in limine*. As the parties agree, the government may not introduce evidence that the alleged victims in this case were sexually trained unless and until Defendant puts such evidence at issue.

The Court grants Defendant's sixteenth motion *in limine*. As the parties agree, the government may not introduce evidence that Defendant planned to escape from a mental-health hospital unless and until Defendant puts such evidence at issue.

Finally, the Court grants the remainder of Defendant's seventeenth motion *in limine*. The government may not introduce evidence of Defendant's communications with and threats to his family, behavior while in custody awaiting trial, behavior with prior counsel, or alleged marijuana and methamphetamine production unless and until Defendant puts such evidence at issue. In addition, the Court prohibits the government from introducing evidence of Defendant's prior criminal record, including for impeachment purposes. The Court finds Defendant's 2004 misdemeanor conviction for filing a false report is not admissible to impeach Defendant's testimony. In addition, the Court prohibits the government from introducing evidence of Defendant's 2007 statutory rape charge, except that the government may introduce the booking photo taken at the time of that arrest without inquiring into the nature of the charge.

### III. Defendant's Motion for *Henthorn* Disclosures

The Court DENIES as premature Defendant's Motion for *Henthorn* Disclosures [846] based on the government's representation that it has initiated the required review and will make any necessary disclosures.

**IV. Defendant's Motion to Sequester Witnesses**

The Court GRANTS in part and DENIES in part Defendant's Motion to Sequester Witnesses [847]. At issue in this Motion is exclusion of witnesses from the courtroom during trial, not any request for more restrictive sequestration of witnesses. The Court grants Defendant's Motion insofar as the Court will exclude witnesses from the courtroom until such witness's testimony is complete and the witness has been excused. The Court, however, finds this order does not apply to the alleged victims and the parties' case agent(s). The Court, therefore, denies Defendant's Motion insofar as the Court concludes Defendant has failed to establish by clear and convincing evidence "that the testimony by the victim[s] would be materially altered if the victim[s] heard other testimony at the proceeding." 18 U.S.C. § 3771(a)(3).

**V. Rulings on Parties' For-Cause Challenges to Prospective Jurors**

At the Pretrial Conference, the Court permitted the parties to challenge prospective jurors for-cause based solely on the jurors' responses to the Prospective Juror Inquiry.

The Court agrees with the joint recommendation of the parties that jurors identified by the following numbers should be excused for-cause: 05-0044, 05-0057, 170781714, 170819712, 170798824, 170812117, 170809012, 170783300, 170769591, 170799642, 170799348, 170754099, 170806208, 170820944, 170786132.

In addition, the Court grants Defendant's motion to excuse the following jurors for-cause: 170822855, 170781038, 170781598, 170776674, and 170776007. The Court also excuses the juror identified by number 170816274 for hardship. The Court, however, denies Defendant's motion to excuse the following jurors for-cause: 170808652, 170756857, 170744074, 170818794, 170793390, 170763446.

The Court will permit any party to renew any for-cause challenge after in-court *voir dire*. In addition, even if a party chose not to challenge a juror for-cause based on a response to the Prospective Juror Inquiry, that party may make such a challenge after in-court *voir dire*.

## VI. Number of Jurors and Number of Peremptory Challenges

The Court finds good cause to seat four alternate jurors in addition to the 12 trial jurors in this case. *See* Fed. R. Crim. P. 24(c).

In light of the nature of the case, the Court exercises its discretion under Federal Rule of Criminal Procedure 24(b)(2) and allocates 12 peremptory challenges for trial jurors to Defendant and seven peremptory challenges for trial jurors to the government. In addition, the Court allocates two peremptory challenges to alternate jurors to each party. *See* Fed. R. Crim. P. 24(c)(4).

## VII. Special Agent Findley's Competence as a Voice Identification Witness

Defendant contends the government may not rely on the testimony of Special Agent Josh Findley and Essie B., the victims' mother, to provide lay-opinion testimony identifying the voice on videos of alleged child pornography as that of Defendant. The Court received foundational testimony from Special Agent Findley at the continuation of the Pretrial Conference on November 16, 2018.[1]

Under Federal Rule of Evidence 709, lay-opinion testimony is admissible if it is (a) "rationally based on the witness's perception;" (b) "helpful to clearly understanding the witness's testimony or to determining a fact issue;" and (c) "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. "Courts regularly admit lay opinion testimony

---

[1] The Court has not yet received foundational testimony from Essie B. The Court directs the government to make Essie B. available for foundational testimony outside the presence of the jury before she testifies at trial.

regarding . . . voice identification testimony . . . even though the witness provides such identification based on past contacts with the pertinent individual that are outside the jury's knowledge." *United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014) (citing *United States v. Thomas*, 586 F.2d 123, 133 n. 23 (9th Cir. 1978)).

At the hearing on November 16, 2018, Special Agent Findley testified his first-hand familiarity with Defendant's voice was based on (1) hearing Defendant speak at court hearings throughout the lengthy history of this case; (2) listening to over 100 hours of recorded jail calls primarily between Defendant and his father; and (3) watching videos in which Defendant can be seen while he is also heard speaking. Based on his familiarity with Defendant's voice, Special Agent Findley testified that he believes the voice on the allegedly pornographic videos is that of Defendant.

Defendant contends Special Agent Findley's testimony should not be permitted because (1) Special Agent Findley improperly reviewed recordings of Defendant's calls while in pretrial custody in violation of the Fourth Amendment; (2) the allegedly pornographic videos do not contain a sufficient sample of the voice to draw a reliable conclusion as to whether the voice is that of Defendant; and (3) on the allegedly pornographic videos the individual uses a "baby talk" voice that renders it inconsistent both in tone and in vocabulary with that which Defendant uses in court or in telephone calls with his father.

Defendant does not have a reasonable expectation of privacy in his jail calls and, therefore, Special Agent Findley's review of those calls did not violate the Fourth Amendment. *United States v. Monghur*, 588 F.3d 975, 979 (9th Cir. 2009) (observing Defendant had no expectation of privacy in jail telephone calls); *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996) (applying that principle to pretrial detainees). Although the allegedly

11 – ORDER FOLLOWING PRETRIAL CONFERENCE

pornographic videos only contain short clips of Defendant's voice, the Court concludes it is a sufficient sample from which Special Agent Findley could identify Defendant's voice. Finally, the Court finds Defendant's voice on the allegedly pornographic videos is not sufficiently altered to render Special Agent Findley unable to identify that voice.[2]

The Court finds Special Agent Findley has demonstrated sufficient first-hand familiarity with Defendant's voice so that his identification is rationally based on his perception. Identification of the voice on the allegedly pornographic videos is relevant to determining an issue of material fact; *i.e.*, whether the voice on the videos is that of Defendant. Finally, the Court finds Special Agent Findley's opinion is based on his first-hand knowledge, and not on any specialized or technical knowledge such that his opinion should be subject to the stricter scrutiny applied to expert opinions under Rule 702.

Accordingly, the Court overrules Defendant's objections and will permit Special Agent Findley to testify as to his lay opinion that the voice on the allegedly pornographic videos is that of Defendant.

DATED: This __21__ day of November, 2018.

/s/Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge

---

[2] Although the Court rejects Defendant's arguments as to the admissibility of Special Agent Findley's identification of the voice on the videos as that of Defendant, the Court does not preclude Defendant from cross-examining Special Agent Findley based on his familiarity with Defendant's voice or his ability to identify Defendant's voice from the video sample available to him. Defendant may also argue such matters to the jury as relevant to the weight that the jury should give to Special Agent Findley's testimony.